UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

J. ODELL,

    Plaintiff,

v.                                                                                        Civ. No. 24-885 MIS/GJF

FRANK BISIGNANO, *Commissioner*
*of the Social Security Administration*,[1]

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED
DISPOSITION ON PLAINTIFF'S MOTION TO REVERSE AND REMAND**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand [ECF 16] ("Motion"), challenging the determination of the Commissioner of the Social Security Administration ("Commissioner") that Plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act. The Motion is fully briefed. *See* ECFs 16, 20, 21. Having thoroughly reviewed the administrative record, the parties' briefs, and the relevant law, and for the reasons set forth below, the Court **RECOMMENDS** that the Motion be **DENIED** and the case dismissed with prejudice.[2]

**I. BACKGROUND**

Plaintiff is fifty-one years old, received his General Education Development ("GED") diploma, and worked as a life safeties and fire prevention technician. Administrative Record ("AR") at 57–58. Plaintiff applied for disability insurance benefits on November 30, 2021, alleging that he became disabled on December 15, 2020, due to COVID-19 side effects, a respiratory

---

[1] Frank Bisignano was sworn in as the Commissioner of the Social Security Administration on May 7, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), he is "automatically substituted as a party."

[2] The Court files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's November 12, 2024 Order of Reference. ECF 11.

ailment,[3] fatigue, depression, and anxiety. AR at 219–25, 254. The Commissioner denied Plaintiff's application initially and upon reconsideration. AR at 80, 93, 117–26. Plaintiff requested a hearing [AR at 127–28], which Administrative Law Judge ("ALJ") Michelle Lindsay conducted on February 15, 2024 [*see* AR at 53–79]. There, Plaintiff appeared *pro se* and vocational expert Nicole King testified. AR 53–79.

On May 23, 2024, the ALJ found that Plaintiff was not disabled under the Social Security Act. AR at 28–45. Plaintiff hired an attorney [AR at 15–16], submitted additional evidence [AR at 23–27], and requested review of the ALJ's decision [AR at 8–9]. The Appeals Council denied his request [AR at 1–4], which made the ALJ's decision the Commissioner's final decision. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Plaintiff filed his Complaint in this Court seeking review of the Commissioner's decision. ECF 1.

## II. STANDARD OF REVIEW

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). To evaluate claims for disability benefits, the SSA uses a five-step sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). The first four steps require the claimant to show that (1) "he is not presently engaged in substantial gainful activity," (2) "he has a medically severe impairment or combination of impairments," and either (3) "the impairment is equivalent to a listed impairment" or (4) "the

---

[3] The respiratory condition is referred to as "O2 3 liters." AR at 254. Doctors prescribe oxygen concentrators that flow at three liters per minute "for patients with moderate hypoxemia or during activities that require increased oxygen demand." *Is 3 liters of oxygen from an oxygen concentrator high*, MICiTECH, https://www.micitech.com/news/Is-3-liters-of-oxygen-from-an-oxygen-concentrator-high.html (last visited July 28, 2025).

impairment or combination of impairments prevents him from performing his past work." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (internal quotation marks omitted) (quoting *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988)). The claimant bears the burden at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146, 146 n.5 (1987); *Grogan*, 399 F.3d at 1261. If the claimant reaches step five, however, the burden shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

### B. Substantial Evidence

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If the ALJ applied the correct legal standards and supported her findings with substantial evidence, the Commissioner's decision stands. *See id.*; *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

To determine whether the ALJ applied the correct legal standards, the Court evaluates whether the ALJ "followed the specific rules of law" required for "weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

To determine whether the ALJ supported her findings with substantial evidence, the Court "looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" without reweighing evidence or substituting its judgment for that of the Commissioner. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary

sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Indeed, substantial evidence can support a conclusion even if reasonable minds could draw two inconsistent conclusions from the record. *Lax*, 489 F.3d at 1084. Additionally, the Commissioner's factual findings are presumed conclusive if substantial evidence supports them. 42 U.S.C. § 405(g).

## III. PLAINTIFF'S CONTENTIONS

In seeking remand, Plaintiff contends that (1) the Appeals Council failed to consider the additional medical source statement from Heather Neil, MS, PA-C, when denying Plaintiff's request for review [ECF 16 at 24–28; ECF 21 at 3–7]; and (2) the ALJ failed to consider medical evidence pertaining to migraine headaches when evaluating Plaintiff's residual functional capacity ("RFC") [ECF 16 at 28–31; ECF 21 at 8–9].

## IV. ALJ'S DECISION, FINDINGS, AND APPEALS COUNCIL DECISION

### A. Steps One Through Three

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 6, 2023, when he left his most recent job working for Bernalillo County. AR at 34 (citing 20 C.F.R. §§ 404.1520(b) and 404.1571 *et seq.*).[4] At step two, she found that Plaintiff had the following severe impairments: "asthma, residuals of COVID 19 infection, neuropathy, partial tearing of the left shoulder rotator cuff with mild glenohumeral

---

[4] This finding conflicts with Plaintiff's assertion that he became disabled on December 15, 2020. *See* AR at 34. The ALJ noted that Plaintiff returned to work on August 22, 2022, but he left in October 2022 due to an alleged nervous breakdown. *Id.* He returned to work again on December 5, 2022, but he left on July 6, 2023. *Id.* The ALJ explained that his second return to work constitutes substantial gainful activity because it lasted for more than six months, and Plaintiff earned sufficient wages. *Id.*

4

joint arthritis, partially torn medial meniscus with mild patellar tendinosis and mild patellofemoral joint space narrowing of the left knee status-post surgical repair, mild tricuspid valve regurgitation, mild pulmonary hypertension, venous insufficiency, patent foramen ovale, migraine headaches, obesity, an unspecified cognitive disorder, depression, [and] anxiety[.]" *Id*. (citing 20 C.F.R. § 404.1520(c)). The ALJ reasoned at step three that none of these impairments, individually or collectively, matched the severity of the listed impairments. AR at 36–38 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

### B. Steps Four and Five

At step four, the ALJ summarized Plaintiff's relevant medical and employment history:

- He stopped working in 2020 due to a COVID-19 infection, "an inability to do basic tasks, brain fog, neuropathy, migraines, fatigue, back pain, shoulder pain, and knee pain." AR at 39.

- Nevertheless, he worked from December 2022 through July 2023, but he "alleged he could not continue due to difficulty with people, stress, brain fog, and [a] left knee injury." *Id.*

- Physically, he allegedly struggles with "prolonged sitting, standing, and walking[,]" with his left leg improving after surgery. *Id.* Mentally, he alleged "extreme depression and a history of two suicide attempts . . . anxiety[,] and panic attacks." *Id.*

- He alleged that he can lift only five pounds with his left hand and twenty pounds with his right; he allegedly cannot stand for more than twenty minutes at a time, walk for more than two minutes at a time, or sit for more than thirty minutes at a time. *Id.* He further alleged severe migraines that are mitigated by Botox. *Id.* Finally, he allegedly struggles to complete daily activities. *Id.*

The ALJ considered this evidence and found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" because "treatment records do not reflect pain, fatigue, or any other symptoms of a severity or frequency that would prevent the claimant from performing at least unskilled sedentary and light work." *Id.*

5

The ALJ reasoned that Plaintiff's impairments are either controlled by treatment or not as limiting as Plaintiff alleges. *See* AR at 38–43. She explained that Plaintiff had normal gait and strength in all extremities, normal MRI and CT scans of the head, Botox reasonably controlled and generally improved his migraine symptoms, he had 95% oxygen saturation, and he reported minimal knee pain and swelling after surgery. AR at 40. Moreover, the ALJ observed that Plaintiff did not need supplemental oxygen (despite some underlying asthma), was running a few times per week, used an inhaler once or twice a day, and walked and wore compression socks to address vascular impairments. *Id.* She did note that Plaintiff's obesity, orthopedic issues (including a torn rotator cuff and surgically repaired torn meniscus), and cardiac and pulmonary conditions justify some physical limitations. AR at 40–41.

The ALJ analyzed Plaintiff's mental symptoms similarly. *See* AR at 41. She observed that the record evidence supporting Plaintiff's depression, anxiety, concentration issues, and memory issues came from Plaintiff's subjective allegations, not an objective mental status evaluation. *Id*. Additionally, she noted that Plaintiff has some difficulty with memory and concentration, but he has an average IQ and can "cook, grocery shop, do online research, and focus on television, and YouTube videos[,]" and can understand basic instructions. *Id.* Thus, the ALJ reasoned that Plaintiff's mental health impairments allow him to work in a simple, unskilled, stable work environment with occasional interactions with others. *Id.*

The ALJ highlighted Plaintiff's ability to perform substantial gainful activity and activities of daily living during his period of alleged disability. *Id.* Specifically, he could "care for his own personal needs, prepare food, drive a car, go shopping, attend church, attend appointments, handle finances, interact with others, follow spoken and written instructions, and exercise[.]" *Id.* Also, he performed substantial gainful activity for more than six months during his period of alleged

disability. AR at 34.

Turning to specific opinions and findings, the ALJ found persuasive the state agency medical consultants, who opined that Plaintiff is limited to light exertion and light work. *Id.* The ALJ found their opinions to be both supportable and consistent because they adequately summarized the findings relevant to Plaintiff's impairments and activities of daily living, and they aligned with Plaintiff's normal physical, mental, and psychiatric exam results. *Id.*

The ALJ found unpersuasive, however, the unidentified opinions within short term disability forms stating that Plaintiff could not work due to COVID-19 symptoms because those opinions lacked explanation of specific functional limitations and conflicted with Plaintiff's "generally normal musculoskeletal, cardiovascular, neurological, and psychiatric examinations[.]" AR at 42.

Additionally, the ALJ found unpersuasive Dr. Eligio Padilla's marked limitations because the psychological evaluation he performed showed Plaintiff to have normal mental status. *Id.* Moreover, according to the ALJ, Plaintiff's limitations as suggested by Dr. Padilla were inconsistent with Plaintiff's generally normal medical examinations, ability to perform activities of daily living, and substantial gainful activity during the period of alleged disability. *Id.*

The ALJ also found unpersuasive Ms. Neil's opinions that Plaintiff "would be off task due to pain 70% of an eight-hour workday, would require frequent breaks, []would need to lie down during the day[,]" and had marked and extreme mental limitations. AR at 42–43. The ALJ reasoned that these opinions were unsupported by explanation, and they conflicted with Plaintiff's generally normal examinations, testing, ability to perform activities of daily living, and substantial gainful activity during the period of alleged disability. *Id.*

Similarly, the ALJ found unpersuasive the opinions of Christine Farley, PMHNP, that

Plaintiff "had a limited ability for lifting, walking, standing, sitting, carrying, pushing, pulling, stooping, reaching, handling, or crouching" and that "his history of emotional instability would greatly impede his ability [to] respond appropriately to coworkers and work pressure or supervision." AR at 43. The ALJ reasoned that these opinions were not supported by quantified limitations or the attached treatment record, and they conflicted with Plaintiff's normal examinations and diagnostic testing, ability to perform daily activities, and "actual performance of substantial gainful activity during the alleged period of disability[.]" *Id.*

Also at step four, the ALJ determined Plaintiff had the RFC to perform simple, unskilled work with light exertion in an environment with few changes and occasional interactions with others. AR at 40–41, 43. Further, she found that Plaintiff could neither lift nor carry more than twenty pounds and could neither sit nor stand for more than six hours of an eight-hour day. AR at 43.

In light of her RFC findings, the ALJ determined that Plaintiff was unable to perform his past relevant work. AR at 43–44.  Nevertheless, she found at step five that, given Plaintiff's "age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy" that Plaintiff could have performed, such as a garment sorter, mail clerk, or electronics assembler. AR 44–45. Consequently, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act. AR at 45.

### C. Appeals Council

After hiring an attorney [AR at 15–16], Plaintiff obtained an additional medical source statement (the "second MSS") from Ms. Neil [AR at 23–27]. Plaintiff requested review of the ALJ's decision, submitting the second MSS as additional evidence. AR at 2, 8–9. The Appeals Council denied Plaintiff's request for review. AR at 1. Addressing the second MSS, the Appeals

8

Council stated that it "does not show a reasonable probability that it would change the outcome of the decision. [The Appeals Council] did not exhibit [the second MSS]." AR at 2.

## V. DISCUSSION

In this section, the Court will explain why (1) the Appeals Council did not consider the second MSS; (2) the second MSS did not qualify for consideration; (3) the ALJ properly considered evidence related to Plaintiff's migraine symptoms; and (4) the RFC determined by the ALJ is supported by substantial evidence.

### A. The Appeals Council did not consider the second MSS because it found that it did not show a reasonable probability of changing the ALJ's decision.

The parties dispute whether the Appeals Council considered the second MSS. *See* ECF 16 at 18, 24–28; ECF 20 at 12–13; ECF 21 at 4–5. If the Appeals Council considered the second MSS, it becomes part of the record used to evaluate the ALJ's decision for substantial evidence. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). If the Appeals Council did not consider the second MSS, the Court will review *de novo* whether it should have. *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).

The Appeals Council considers additional evidence only if it finds that the evidence qualifies. *See id.*; *Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006). Additional evidence qualifies if the Appeals Council finds that it is (1) new, (2) material, (3) chronologically pertinent, and (4) reasonably probable to change the outcome of the ALJ's decision; the plaintiff must also have good cause for not submitting the evidence earlier. *See Threet*, 353 F.3d at 1191; *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013); *Yanni v. O'Malley*, No. 23-CV-435 DHU/DLM, 2024 WL 3567016, at *11 (D.N.M. July 29, 2024); 20 C.F.R. § 404.970.

In *Yanni*, for example, the Appeals Council stated that it "received and considered" the plaintiff's objections to the ALJ's decision, noted the newly submitted evidence, and then stated,

9

"[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." *Yanni*, 2024 WL 3567016, at *12 (internal quotation marks and emphasis omitted). Judge Martinez held that the Appeals Council did not consider the additional evidence because it found that it did not qualify.[5] *See id.* Three reasons supported Judge Martinez's holding. *Id.* First, the phrase "received and considered" did not show dispositively that the Appeals Council legally considered the additional evidence because it had to review the evidence to determine whether it qualified for consideration.[6] *See id.* Second, by finding that the additional evidence failed a prerequisite for consideration, the Appeals Council must have found that the additional evidence did not qualify for consideration. *See id.* Third, regulations directed the Appeals Council to mark qualifying evidence as an exhibit, and the Appeals Council declined to "exhibit" the evidence. *See id.*

Here, like in *Yanni*, the Appeals Council did not consider the second MSS. *See id.* at *11–12. The Appeals Council, using the same language it did in *Yanni*, instead stated that it reviewed the second MSS but found it did not show a reasonable probability of changing the ALJ's decision and, thus, did not consider it. AR at 1–2. Moreover, unlike in *Martinez*, the Appeals Council here did not explicitly incorporate the second MSS into the record. *Id.* Accordingly, the Appeals Council did not consider the second MSS.

### B. The Appeals Council properly declined to consider the second MSS because it did not show a reasonable probability of changing the outcome of the ALJ's decision.

The Court now reviews *de novo* whether the Appeals Council properly found that the

---

[5] Other courts have concluded as Judge Martinez did when analyzing similar issues. *See, e.g.*, *Anaya v. Colvin*, No. 15-CV-1117 GJF, 2016 WL 9775030, at *5 (D.N.M. Nov. 7, 2016); *Burbridge v. Saul*, No. 20-CV-100 LF, 2021 WL 236339, at *4 (D.N.M. Jan. 15, 2021); *Evans v. Saul*, No. 20-CV-53 JFR, 2021 WL 493399, at *5–6 (D.N.M. Feb. 10, 2021); *Stump v. Kijakazi*, No. 21-CV-413 CG, 2022 WL 1136648, at *5–6 (D.N.M. Apr. 18, 2022).

[6] Conversely, in *Martinez*, similar language was dispositive because the Appeals Council stated explicitly that it incorporated additional evidence into the record, impliedly acknowledging that the evidence qualified. *See Martinez*, 444 F.3d at 1207.

10

second MSS did not qualify for consideration, applying the regulatory factors explained in *Threet* and laid out above. *See Threet*, 353 F.3d at 1191; 20 C.F.R. § 404.970. In this section, the Court will explain why the second MSS is new and chronologically pertinent, but it does not present a reasonable probability of changing the ALJ's decision.

### 1. The second MSS is new and chronologically pertinent.

Evidence is new if it is not duplicative or cumulative of evidence presented to the ALJ. *Threet*, 353 F.3d at 1191. Evidence is not duplicative or cumulative if it was prepared after the ALJ's decision. *Yanni*, 2024 WL 3567016, at *13 (citing *Threet*, 353 F.3d at 1191). Here, the ALJ filed her decision on May 23, 2024 [AR at 45], and Ms. Neil prepared the second MSS on June 18, 2024 [AR at 27]. Accordingly, the second MSS is new.

Evidence is chronologically pertinent if it relates to the time period on or before the ALJ's decision. *Yanni*, 2024 WL 3567016, at *13 (citing *Threet*, 353 F.3d at 1191). Here, the second MSS describes symptoms and impairments that arose prior to the ALJ's decision without describing symptoms and impairments arising after. *See* AR at 23–27; 31–45. Accordingly, the second MSS is chronologically pertinent.

### 2. The second MSS does not show a reasonable probability that it would change the outcome of the ALJ's decision.

Governing regulations treat as separate requirements materiality and showing a reasonable probability of changing the outcome of the ALJ's decision. 20 C.F.R. § 404.970(a)(5). The Tenth Circuit, however, treats them as the same requirement by defining "material" as showing a reasonable possibility that it would change the outcome of the ALJ's decision. *See Threet*, 353 F.3d at 1191. The regulations have since been amended to change reasonable *possibility* to reasonable *probability*. *See Yanni*, 2024 WL 3567016, at *13 (citing 20 C.F.R. § 404.970(a)(5)).

Judge Martinez's analysis in *Yanni* proves helpful again. *See id.* at *13–14. There, to

11

reconcile the conflict between regulation and precedent, he conducted a two-step inquiry to determine whether additional evidence satisfies this element. *See id.* At step one, the additional evidence is material if it "involved or directly related to issues adjudicated by the ALJ." *Id.* at *14. At step two, the additional evidence is weighed against "the issues and record before the ALJ" and the ALJ's reasoning to determine whether it shows a reasonable probability of changing the outcome of the ALJ's decision. *Id.*

The second MSS is material because it involves and is directly related to issues adjudicated by the ALJ. *See id.* For example, the second MSS includes opinions on Plaintiff's ability to perform light work tasks, to process information at low stress jobs, to sit or stand for extended periods, to work without frequent breaks, and to lift and carry objects. AR at 23–26. The ALJ adjudicated these issues when determining Plaintiff's RFC. AR at 43.

The second MSS, however, does not show a reasonable probability of changing the outcome of the ALJ's decision. The ALJ concluded that Plaintiff can perform simple, light work with light exertion in a setting with few changes and few interactions with others. AR at 39–41. In support of her conclusion, the ALJ observed that Plaintiff had (1) normal physical, neurological, and psychiatric examinations and diagnostic test results; (2) performed substantial gainful activity during the period of his alleged disability; and (3) continues to perform activities of daily living. AR at 40–41. The second MSS does provide one example of an abnormal physical and psychiatric examination. AR at 23–27. But the ALJ cited to numerous other examination results to support the proposition that those results were normal. AR at 39–43. Moreover, the second MSS does not call into question Plaintiff's normal diagnostic test results or performance of substantial gainful activity and activities of daily living during the period of alleged disability. AR at 23–27. Accordingly, the second MSS does not show a reasonable probability of changing the outcome of the ALJ's

decision, and the Appeals Council was correct to not consider it.

### C. The ALJ properly considered medical evidence pertaining to Plaintiff's migraine headaches when evaluating his symptom allegations.

Plaintiff argues that the ALJ failed to "meaningfully consider" when determining Plaintiff's RFC his alleged need for light and sound exposure limitations. ECF 16 at 28–30. Plaintiff highlights that the jobs identified by the vocational expert all require exposure to moderate noise. ECF 21 at 8–9. The Commissioner, in contrast, maintains that substantial evidence supports the ALJ's conclusion even if reasonable minds could conclude differently. ECF 20 at 9–11.

Plaintiff's criticism of the RFC follows a pattern the Court has rejected in other cases.[7] Generally, in those cases, plaintiffs: (1) emphasize that the ALJ must consider all the evidence; (2) assert that the ALJ's RFC failed to meaningfully consider some alleged limitation; (3) cite nothing to clarify what meaningful consideration entails; (4) insist the ALJ ignored evidence favoring the imposition of a limitation; (5) ignore the RFC's actual limitations to avoid having to explain how those limitations do not account for said limitation; and (6) selectively cite only to the parts of the record that favor Plaintiff. Ultimately, these plaintiffs attempt to dress a factual disagreement in the clothing of a legal argument over substantial evidence.

The Court cannot disturb the Commissioner's decisions based on Plaintiff's rationale. *See Biestek*, 587 U.S. at 102–03. When the record poses a factual inconsistency, and the ALJ resolves that conflict, the substantial evidence standard demands deference to the ALJ's choice and forbids

---

[7] This Court has considered and rejected similar arguments at least seven times. *See* Motion to Remand to Agency for Rehearing with Supporting Memorandum at 11–14, *Leedy v. SSA* (Civ. No. 16-224); Motion to Remand to Agency for Rehearing with Supporting Memorandum at 5–12, *Franco v. SSA* (Civ. No. 17-821); Motion to Remand to Agency for Rehearing with Supporting Memorandum at 8–12, *Lucero v. SSA* (Civ. No. 18-701); Corrected Motion to Remand to Agency for Rehearing with Supporting Memorandum at 7–12, *Young v. SSA* (Civ. No. 19-220); Motion to Remand for Rehearing with Supporting Memorandum at 13–27, *Munoz v. SSA* (Civ. No. 20-245); Motion to Remand at 13–18, *Marquez v. SSA* (Civ. No 21-451); Motion to Remand to Agency at 22–25, *Gallegos v. SSA* (Civ. No. 21-1169). And this Court is not alone. *See, e.g.*, Order by Magistrate Judge Jerry H. Ritter denying Motion to Remand, *Martinez v. SSA* (Civ. No. 21-118).

re-weighing the evidence underlying that choice—unless, of course, the ALJ relied solely on evidence that no reasonable mind could "accept as adequate to support a conclusion." *See, e.g.*, *id.* (internal quotation marks omitted) (quoting *Consol. Edison Co.*, 305 U.S. at 229); *accord* 42 U.S.C. § 405(g); 20 C.F.R. § 404.1520b(b). If a reasonable mind could accept the facts as adequate to support the ALJ's conclusion, the Court will not disturb it. *See Raymond v. Astrue*, 621 F.3d 1269, 1272–73 (10th Cir. 2009).

Here, substantial evidence supports the ALJ's treatment of medical evidence concerning Plaintiff's alleged need for light and sound exposure limitations because she resolved a factual inconsistency by relying on evidence that a reasonable mind could accept as adequate to support her conclusion. *See Biestek*, 587 U.S. at 102–03. The ALJ concluded that Botox reasonably controlled and generally improved Plaintiff's migraine symptoms. AR at 40. The ALJ cited to treatment records that support her conclusion. AR at 40, 907, 1007–08. Those treatment records state that Plaintiff's "migraines are managed well with recent Botox injections[,]" [AR at 907], and "Botox works best for him in terms of prevention[,]" [AR at 1008]. Record evidence speaks to Plaintiff's migraine-related light and sound sensitivity. AR at 87, 100, 698, 701. But a reasonable mind could disregard these sensitivities if she concluded, as the ALJ did, that Botox reasonably controlled and generally improved the migraines causing these sensitivities. *See Biestek*, 587 U.S. at 102–03. And the chance that reasonable minds could draw two inconsistent conclusions about whether Botox controls Plaintiff's migraines does not mean that the ALJ's conclusion is not supported by substantial evidence. *See Lax*, 489 F.3d at 1084.

In his argument, Plaintiff relies primarily on a distinguishable case. *See Stingley v. King*, No. 24-CV-73 JCH/KK, 2025 WL 428574 (D.N.M. Feb. 7, 2025). In *Stingley*, Judge Khalsa held that the ALJ did not account for the plaintiff's light and sound sensitivities when determining his

RFC. *Id.* at *9. Specifically, that ALJ neither explained nor cited evidence to support her conclusion that the plaintiff could tolerate fluorescent light. *Id.*

*Stingley* differs from this case in two important respects, both of which deal with this ALJ's conclusion—supported by substantial evidence—that Botox reasonably controlled and generally improved Plaintiff's migraine symptoms. *See id.* The plaintiff in *Stingley* first reported that Botox made his migraines less frequent, but within three years he reported that Botox became ineffective and discontinued treatment. *See id.* at *2–3, 11. Conversely, here, the ALJ concluded that Botox is effective because it generally improves and reasonably controls Plaintiff's migraine symptoms. AR at 40. Second, in *Stingley*, the ALJ did not sufficiently connect any limitations to the plaintiff's migraine symptoms but stated that the plaintiff could tolerate fluorescent lighting. *See Stingley*, 2025 WL 428574, at *9. Here, the ALJ did not connect any limitations to Plaintiff's migraines, but she concluded that Botox adequately addressed Plaintiff's migraine symptoms, removing the need for migraine-specific limitations. AR at 38–43.

### D. Substantial Evidence Supports the ALJ's RFC Findings

The Court finds that substantial evidence supports the ALJ's RFC findings. As noted, the ALJ found that Plaintiff had the RFC to perform simple, unskilled work with light exertion in an environment with few changes and occasional interactions with others. AR at 40–41. The record contains sufficient—*i.e.*, "more than a mere scintilla"— evidence to support this RFC finding. *See Biestek*, 587 U.S. at 103; *supra* Part IV(B) (recounting the evidence the ALJ relied on in formulating this RFC).

Furthermore, such a finding "shall be conclusive." 42 U.S.C. § 405(g); *see also Lax*, 489 F.3d at 1084 (observing that chance of drawing two inconsistent conclusions does not prevent an ALJ's conclusion from being supported by substantial evidence). The Court thus rejects Plaintiff's argument that the evidence could support a different RFC or a finding that Plaintiff's impairments

15

prevent him from working at all. *See* ECF 16 at 24–30.

In sum, the ALJ applied the correct legal standards and supported her RFC findings with substantial evidence.

## VI. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Plaintiff's Motion to Reverse and Remand to Agency [ECF 16] be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.